No. 13818

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STANLEY J. FOLDA, Personal Representative
of the Estate of May Magdalena Folda,
deceased,

Plaintiff and Appellant,

-vs-

THE CITY OF BOZEMAN, THE V.F.W. CLUB and
THE FRATERNAL ORDER OF EAGLES NO. 326,

Defendants and Respondents.

Appeal from:  District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Bennett and Bennett, Bozeman, Montana

For Respondent:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Landoe, Gary and Planalp, Bozeman, Montana
Anderson, Symmes, Brown, Gerbase, Cebull and Jones,
Billings, Montana

Submitted on briefs: April 17, 1978

Decided: JUL 2 0 1978

Thomas J. Kearney
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Plaintiff appeals from a jury verdict in favor of defendant V.F.W. Club and from orders of the District Court granting directed verdicts in favor of defendants City of Bozeman & The Fraternal Order of Eagles No. 326 (Eagles) in plaintiff's suit for the death of his daughter.

In the early morning hours of June 7, 1975, Mary Folda, aged 17, and her friend, Cindy Williams, drowned in Bozeman Creek, within the City of Bozeman, Montana.

Earlier in the evening Cindy had picked up Mary at her parents' home in Belgrade and had driven into Bozeman. Friends of Mary saw her in the Arcade Bar sometime between 8:00 and 9:00 p.m. and later on at the bar run by The Fraternal Order of Eagles No. 326. About 10:30 or 11:00 p.m. Randy Short and his fiance, Eileen Richey, came into the V.F.W. Club and saw Mary there drinking tequillas with beer chasers.

Mary stayed at the V.F.W. continuing to drink until about 1:00 or 1:30 a.m. By then she was in an extremely intoxicated condition and unable to leave the bar on her own. With the help of Cindy and two other acquaintances, Sherry Pierce and Pam Barnes, Mary left the V.F.W. through its rear door and headed through the back alley for a public parking lot some 100 feet away.

The V.F.W. was located about 30 feet north of the alley. To the east of the V.F.W. and south of the alley was the parking lot to which Mary was headed. The parking lot, which was used by patrons of several bars and other businesses in the area, was owned by the Eagles and the City of Bozeman. The portion immediately adjacent to the alley was owned by the Eagles and the portion south of that was owned by the City. The parking lot was bordered the entire length of its west side by Bozeman Creek, which at that time of the year was in flood stage. The alley

crossed Bozeman Creek by means of a bridge.

When Mary reached the parking lot, she ran for the creek. Cindy and the others pulled her out and Pam then brought Cindy's car to the parking lot. After the girls put Mary into the back seat of Cindy's car, Cindy assured Sherry and Pam that she could get Mary to her apartment all right.

When Sherry and Pam left, Cindy was sitting in the front seat of her car and Mary was in the back seat. Approximately twenty minutes later Mary ended up in the creek again. Cindy apparently went after her to try and save her, but was unable to do so. Both girls drowned. Mary's body was recovered a few days later several miles downstream. No witness appeared at trial who saw what happened between the time Mary was in Cindy's car and the time she drowned nor were any eyewitnesses to the incident identified at trial.

On December 19, 1975, Stanley J. Folda, Mary's father and the personal representative of her estate, filed suit against the City of Bozeman (City) and the V.F.W. Club. In an amended complaint he added the Eagles as a party defendant. The father alleged in his amended complaint: that defendant V.F.W. Club negligently permitted Mary Folda to leave the Club in an intoxicated condition through an entrance located in a position such that Mary fell into Bozeman Creek while it was in flood stage; that defendant City failed to maintain conditions sufficient to protect Mary from inadvertently stepping into Bozeman Creek at the parking lot; and that defendant Eagles negligently maintained its portion of the parking lot in such a condition that persons entitled to occupy it were readily exposed to the hazards existing in connection with Bozeman Creek. He sought damages against each of the defendants for the loss to Mary's heirs of her comfort, advice, and society and for Mary's personal loss including

- 3 -

pain and suffering. The pretrial order added an additional claim against defendant V.F.W. alleging that it negligently sold and served intoxicating liquor to Mary in violation of section 4-3-306(1)(a), R.C.M. 1947.

After plaintiff and defendants had rested their cases, defendant City and defendant Eagles moved for directed verdicts in their favor on the following grounds: (1) Plaintiff failed to prove that Mary Folda entered Bozeman Creek from land that either defendant owned; (2) neither defendant had a duty to fence, barricade or otherwise cover Bozeman Creek where it bordered the parking lot; (3) Mary Folda was contributorily negligent; and (4) Mary Folda assumed the risk of Bozeman Creek. The District Court granted these motions, but denied a subsequent motion for a directed verdict by defendant V.F.W. Club. The jury rendered its verdict in favor of defendant V.F.W. Club.

Plaintiff raises three issues on appeal:

1. Error in excluding certain testimony;

2. Error in granting directed verdicts for defendants City and Eagles; and

3. Sufficiency of the evidence to support the jury verdict in favor of defendant V.F.W. Club.

Plaintiff's first issue for review relates to the District Court's sustaining objections to questions by plaintiff's counsel to two witnesses concerning the approximate location at which the deceased Mary Folda entered Bozeman Creek. In the agreed facts in the pretrial order, the parties stipulated that Mary Folda drowned in Bozeman Creek where it runs along the west side of the parking lot in question. Through his questions to plaintiff, Stanley Folda, and to Officer James Stanley, one of the investigating officers, plaintiff's counsel attempted to establish whether Mary Folda entered the creek from land owned by the Eagles or land owned by the City. Because neither Stanley

Folda or Officer Stanley had observed Mary Folda enter the creek, the District Court sustained defendants' objections to these questions on the grounds of hearsay.

Plaintiff contends that the District Court improperly sustained objections to these questions and that Folda's and Stanley's testimony as to the approximate location where Mary Folda entered Bozeman Creek was admissible under either the "present sense impression" exception to the hearsay rule, citing Sellers v. Montana-Dakota Power Co. (1935), 99 Mont. 39, 55-6, 41 P.2d 44, or the "res gestae" rule, citing State v. Newman (1973), 162 Mont. 450, 457-58, 513 P.2d 258. We disagree.

Testimony as to present sense impressions of a declarant is allowed as an exception to the hearsay rule upon the principle that the declarations were made while the mind of the declarant was laboring under the excitement aroused by the incident before there was time to reflect and fabricate, and hence the solemnity of an oath is not necessary to give the declaration probative value. Sellers, 99 Mont. 56. The statutory basis of the res gestae rule is section 93-401-7, R.C.M. 1947:

> "Where, also, the declaration, act, or omission
> forms part of a transaction, which is itself
> the fact in dispute, or evidence of that fact,
> such declaration, act or omission is evidence,
> as part of the transaction."

Res gestae statements must be spontaneous and substantially contemporaneous with the injury causing event. Newman, 162 Mont. 458.

Here we are dealing with testimony from people who were not present at the time of the accident and who attempted to testify to the approximate location where Mary Folda entered Bozeman Creek based upon what they heard from other persons. Stanley Folda's knowledge of where his daughter entered the creek was based upon what the Bozeman police had told him. He was not even certain though which police officer told him the alleged location where his daughter entered the creek. Officer Stanley

was not an eye witness to the accident, but received his information concerning the accident from other people who allegedly saw it. These other people were never identified nor were they produced at trial. In light of these facts we find the cases plaintiff cites inapplicable. We do not know who made the statements upon which Stanley Folda and Officer Stanley rely, nor do we know when or under what circumstances they were made. We see no way to insure their veracity.

Plaintiff argues that we should adopt the position of Dean McCormick, who advocated admitting complete officers' investigative reports as an exception to the hearsay rule. McCormick, Can the Courts Make Wider Use of Reports of Official Investigations? 42 Iowa L.Rev. 363 (1957). McCormick advocated admitting these records because of time and reliability factors. The investigating officer usually comes on the scene as early as it is feasible to get there and interviews witnesses before they have been swayed by the parties. Additionally, the witnesses often have only a dim recollection of the event by the time of trial. McCormick, 42 Iowa L.Rev. at 364-65.

Plaintiff's reliance upon McCormick's position is misplaced. Officer Stanley's investigative report was introduced at trial without objection. It contained no statements from alleged eyewitnesses to the incident as to where Mary Folda entered Bozeman Creek. Any written statements that may have been made by eyewitnesses were never presented at trial. For these reasons we conclude the District Court was correct in sustaining objections to this testimony by Stanley Folda and Officer Stanley.

Plaintiff's second issue for review relates to the directed verdicts which the District Court granted in favor of defendants City and Eagles. Plaintiff argues that the City and the Eagles as owners of the parking lot owed a duty to the public

and to Mary Folda to prevent "easy access" into Bozeman Creek. He contends that they had a duty either to place barricades or to provide warning of a dangerous place adjoining the parking lot. Consequently, he concludes the District Court erred in granting directed verdicts in favor of these defendants.

Defendants City and Eagles argue that there is neither a statute nor a city ordinance which imposes such a duty upon them; that a landowner's duty is simply to warn of hidden or lurking dangers; and that the landowner is not an insurer against all accidents, citing Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383; and Uhl v. Abrahams (1972), 160 Mont. 126, 503 P.2d 26. They conclude the District Court properly granted them directed verdicts. We agree.

The landowner is entitled to assume that an invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses. There is no duty to give the invitee notice of an obvious danger. Demaree v. Safeway Stores, Inc. (1973), 162 Mont. 47, 52, 508 P.2d 570, 574. Bozeman Creek is a natural stream which runs through the City of Bozeman. At the time of the accident the creek was in flood stage and almost overflowing. The danger of the creek at this time of year was an obvious one. Accordingly, defendants City and Eagles were under no duty to warn Mary Folda of this danger.

Plaintiff argues that we should follow the rulings of this Court in Tiddy v. City of Butte (1937), 104 Mont. 202, 210, 65 P.2d 605, and Ledbetter v. City of Great Falls (1949), 123 Mont. 270, 275, 213 P.2d 246, that a city has a duty to keep its public streets and walks in a reasonably safe condition for travel and that this duty extends to dangerous conditions near the sidewalks. In Tiddy the plaintiff stumbled over a defect in a sidewalk one night and fell into an excavation adjoining the

- 7 -

sidewalk. No warning or barricade was posted at that point. The defendant city was held liable. In Ledbetter the plaintiff was seriously injured when he fell into an excavation one night which had been dug by a licensee of the city working on a water main. The excavation was not barricaded nor were there any warning lights. This Court overruled the defendant city's demurrer to plaintiff's complaint.

Because Tiddy and Ledbetter dealt with the duties a city owes to the public to keep its streets and sidewalks in safe condition, we hold that they are not applicable to defendant Eagles, a private landowner. Additionally, because those cases concern defects or obstructions which are caused by a city and which rendered a sidewalk or street unsafe, they are distinguishable from the instant situation. Here we are not dealing with a defect or obstruction, but with a natural condition which constituted an open and obvious danger. The City had no duty to warn Mary Folda of such a danger.

Plaintiff urges us to adopt the position of the California courts which hold that under certain circumstances a natural condition may, nevertheless constitute a dangerous or defective condition permitting the imposition of liability, citing Hawk v. City of Newport Beach (1956), 46 Cal.2d 213, 293 P.2d 48 and Knight v. Kaiser Company (Dist. Ct. of App. 1956), 305 P.2d 248. These cases are distinguishable. The Hawk decision was based upon a statute which imposed liability upon a local agency for injuries to persons or property resulting from the dangerous or defective condition of public property if the legislative body had notice of the condition and failed to act upon it within a reasonable time. Hawk, 293 P.2d 49. Plaintiff has not shown that Montana has such a statute. In Knight the plaintiff sued the defendant upon a theory of attractive nuisance when defendant's sand pile, upon which young children often played, caved

in and asphyxiated plaintiff's 10 year old child. The appellate court held plaintiff's complaint stated a cause of action against defendant. The Supreme Court of California reversed the appellate court holding that a sand pile did not constitute an attractive nuisance. Knight v. Kaiser Company (1957), 48 Cal.2d 778, 312 P.2d 1089.

We hold that under the undisputed facts in this case the District Court properly granted directed verdicts to defendants City and Eagles.

Plaintiff's final issue for review relates to the sufficiency of the evidence to support the jury verdict in favor of defendant V.F.W. Club. Plaintiff contends that by V.F.W.'s serving liquor to Mary Folda, a minor, and by its continuing to serve her liquor while she was in an intoxicated condition, defendant V.F.W. violated sections 4-6-103 and 104, R.C.M. 1947; that in so violating these statutes defendant V.F.W. was negligent per se; and that Mary Folda entered Bozeman Creek and thereby drowned because of her intoxicated condition. Plaintiff argues that defendant V.F.W. should be held liable on this basis and that there is no evidence to show that Mary Folda was contributorily negligent.

Defendant V.F.W. counters that the evidence is sufficient to support the jury's verdict under two approaches: (1) that defendant V.F.W. was not negligent, or (2) that Mary Folda was contributorily negligent. In our view the evidence supports a finding that Mary Folda was contributorily negligent and therefore holds that plaintiff is precluded from recovering against any of the defendants.

At the time of this accident the rule that contributory negligence precluded any recovery against a defendant was still in effect. See Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383. The evidence shows that Mary Folda

began drinking early in the evening of June 6, 1975; that she went to the Arcade Bar and the Eagles Bar before ending up at the V.F.W. Club; that Mary Folda was extremely intoxicated by 10:30 or 11:00 p.m. when Sandy Short and Eileen Richey arrived at the V.F.W.; that she continued to drink until she left the V.F.W. between 1:00 and 1:30 a.m.; that she could not leave the V.F.W. under her own power; that on the way to the parking lot she ran into Bozeman Creek once and had to be pulled out by her friends; that she was then placed in the back seat of a car; and that someway (which was never explained at trial) she ended up in the creek again 20 minutes after her first entry and was thereby drowned. Voluntary intoxication will not excuse the degree of care that a person must take for his or her own safety. Biddle v. Mazzocco (1955), 204 Or. 547, 284 P.2d 369, 469. We think the evidence supports a conclusion that Mary Folda voluntarily became intoxicated, that she disregarded her duty to use due care for her own safety, and that this was a proximate cause of her death.

Judgment affirmed.

_____
Justice

We concur

_____

_____

_____
Justices

- 10 -

Mr. Chief Justice Frank I. Haswell deeming himself disqualified did not participate in this cause.