IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 82-392

DONAL R. SORUM (FATAL),
DELORES P. SORUM, personal
representative for the Estate
and of DENISE SORUM MATZ and
LEE ANN GETTEN, as children
of the deceased,

       Claimant and Appellant,

       v.

RIEDER AND COMPANY,

       Employer,

  and

AMERICAN HARDWARE MUTUAL,

       Insurer, Respondent and
       Cross-Appellant.

FILED

AUG 1 1983

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AMENDING OPINION

PER CURIAM:

The parties having notified the Court that an error of fact appears in our opinion in this case,

IT IS ORDERED:

1. The opinion of Court in this case be and is hereby amended so that the language appearing on page three of the opinion reads as follows:

> "Claimants Sorum and American Hardware were unable to reach an amicable agreement as to the division of the settlement. As a result, $285,000 of the settlement had before this appeal been distributed to Sorum; the remaining $15,000 has been placed in deposit with a trustee pending the outcome of this litigation."

DATED this 1st day of August, 1983.

- 1 -

_____
             Chief Justice

_____

_____

_____

_____

_____
               Justices

No. 82-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

DONALD R. SORUM, (FATAL), DELORES P.
SORUM, personal representative for the
Estate of DENISE SORUM MATZ AND LEE ANN
GETTEN as children of deceased,

Claimant and Appellant,

-vs-

RIEDER AND COMPANY, Employer,

and

AMERICAN HARDWARE MUTUAL,

Defendant and Respondent.

Appeal from:   Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

Counsel of Record:

For Appellant:

Frisbee, Moore & Stufft; John P. Moore argued,
Cut Bank, Montana

For Respondent:

Marra, Wenz, Johnson & Hopkins; Thomas Marra and
Charles Johnson argued, Great Falls, Montana

Submitted:   June 2, 1983

Decided:   July 14, 1983

Filed: JUL 14 1983

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Claimants Sorum appeal from an order of the Workers' Compensation Court awarding 100% subrogation to American Hardware Mutual in the proceeds of a third-party settlement of tort claims achieved by Sorum. American Hardware cross-appeals from the application by the Workers Compensation Court of the Swanson rule (Swanson v. Champion International Corporation (1982), _____ Mont. _____, 646 P.2d 1166, 39 St.Rep. 639), to the subrogation rights of American Hardware.

We reverse the Workers Compensation Court as to the 100% subrogation interest of American Hardware, and affirm the application of the Swanson rule.

Before discussing the issues, we state the general facts giving rise to the controversy. Donald R. Sorum, an employee of Rieder & Company of Cutbank, Montana, lost his life on August 22, 1979 as the result of an industrial accident. One Leonard F. Doran was operating a road grader which got out of control and struck a scaffold upon which decedent Sorum was working. The circumstances related to this court indicate that the death may have been instantaneous.

Rieder & Company, Sorum's employer, carried its workers' compensation coverage with American Hardware. That company, in the regular course of events, began paying workman's compensation benefits to the widow of the deceased, Dolores P. Sorum. The subrogation rights of American Hardware arise out of the payment of those benefits.

Dolores Sorum, as personal representative and widow of the decedent, and the heirs in their own behalf, brought suit against Leonard F. Doran for damages arising out of the injuries and death of Donald R. Sorum. While this suit was

- 2 -

in progress, Doran's insurance carrier, Safeco Insurance Company, brought action in the District Court, 18th District, Gallatin County, alleging fraud in the procurement of the insurance policy which would otherwise insure Doran for his liability arising out of Sorum's death. Through claimants' counsel, Sorums intervened in the Gallatin County action and eventually the District Court in Gallatin County granted summary judgment in favor of the Sorums, refusing to hold Doran's insurance policy void. As a result, a settlement of $300,000 was reached for Safeco's responsibility as insurer of Doran.

Claimants Sorum and American Hardware were unable to reach an amicable agreement as to the division of the settlement. As a result, the $300,000 has been placed on deposit with a trustee pending the outcome of this litigation. In the meantime, the matter was brought to the Workers' Compensation Court for decision, resulting in the orders which are here appealed from by the parties.

I

Whether American Hardware is entitled to 50% or 100% subrogation for the benefits it has paid or will pay to claimants Sorum.

The subrogation rights of American Hardware, a first lien on the claim, judgment or recovery made by the Sorums, an controlled by section 39-71-414, MCA. In pertinent part, that section provides:

"Section 39-71-414. Subrogation.

"(1) If an action is prosecuted as provided for. . . the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workman's Compensation Act. . .

"(2)(a) If the injured employee intends to institute the third-party action, he shall give the

- 3 -

insurer reasonable notice of his intention to institute the action.

"(b) The injured employee may request that the insurer pay a proportionate share of the reasonable cost of the action, including attorneys' fees.

"(c) The insurer may elect not to participate in the cost of the action. If this election is made, the insurer waives 50% of its subrogation rights granted by this section.

". . .

"(3) If an injured employee refuses or fails to institute the third-party action within 1 year from the date of injury, the insurer may institute the action in the name of the employee and for the employee's benefit or that of the employee's personal representative. . ."

The principal controversy under this issue is whether American Hardware communicated to Sorums that it elected to pay a proportionate share of the reasonable costs of the action against Doran, including attorney's fees. American Hardware contends that it did communicate such election to counsel for the Sorums. On the other hand, the Sorums contend that American Hardware never communicated its intent to pay such costs and attorney's fees until the settlement had been achieved and, therefore, it has waived 50% of its subrogation rights.

The record in this case, the arguments in brief and the oral presentation are replete with charges and countercharges by each counsel of bad faith and sharp practice on the part of the other. We cut through these charges and countercharges to go to the heart of the matter: What evidence in the record indicates on the part of American Hardware an unequivocal agreement communicated to the Sorums that the company would pay a proportionate share of the reasonable costs of the action, including attorney's fees?

- 4 -

In the voluminous record of this case, all that we have on this principal issue is a few letters between the parties that shed any light on American Hardware's communicated intent to Sorum. Although the deposition of Wesley Noel, the insurance adjuster for American Hardware handling the case at the time, was taken in the course of the proceedings here, Noel was prevented by his counsel at the time of his deposition from producing material from his file which would have aided in determining American Hardware's intent as to such participation. Moreover, at the Workers' Compensation Court hearing, no additional evidence was presented on oral testimony other than documentary exhibits, including those to which we will here advert. We are, therefore, in as good position as the Workers' Compensation Court to determine the fact issue.

As we indicated, on August 22, 1979, the decedent met his unfortunate death. On August 28, 1979, Noel traveled to Bozeman to discuss the facts of the accident with Doran, the operator of the road grader. On October 12, 1979, letters were issued to Dolores Sorum as personal representative of the decedent's estate. She signed the complaint against Leonard Doran on October 26, 1979. On November 6, 1979, Noel addressed a letter to counsel for the claimant, in which he said with respect to the payment of costs and attorney's fees:

> "As of now, we have not reached a final determination as to whether or not we will or will not participate in the cost of any action which might be filed. In the event you are unable to reach an agreement with the Doran's insurance company or Doran and his representatives, and determine it is necessary to institute an action, I would appreciate your giving me ample notice of your intentions." (Emphasis supplied).

On November 12, 1979, counsel for the Sorums transmitted to Noel, along with an enclosing letter, a copy of Sorum's complaint against Doran which, the letter stated, had been filed. The court file indicates that the complaint was filed on November 15, 1979.

The written records in this cause do not indicate that a request was made by counsel for Sorums for payment of the company's share of the costs and attorney's fees under section 39-71-414 (2)(b). However, Noel's letter of November 6, 1979, stating the company had not yet made a decision, indicates such a request had been made.

It should be apparent that when a request is made upon an insurer under section 39-71-414, MCA, for payment of a share of the attorney's fees and costs of an action against a responsible third party, the response of the insurer as to its intention should be explicit, immediate and without reservation. Such a response is necessary because it will aid the claimant's attorney to evaluate the claim from his clients' viewpoint, and it will give assurance to the claimant that costs will be shared as incurred if the suit is unsuccessful; and, further, it means that attorney's fees in the third-party suit will be shared in those cases where the claimant is responsible for fees.

The next correspondence in the record is a letter from Noel to claimant's attorney dated January 24, 1980. Confirming a recent conversation, Noel stated:

> "As I pointed out in our telephone conversation, we do wish to actively participate in a third-party action and, thus, protect our subrogation rights as per the workman's compensation law. I have discussed this point with the company attorney. . . and he has suggested that perhaps it might be helpful if he were to assist by taking depositions, or in any other area where his expertise might be of some benefit. If you have other suggestions as

to how we might be able to participate, which would be to our mutual benefit, please advise." (Emphasis supplied)

It is on the language of that letter that the Workers' Compensation Court relied when it found that American Hardware intended to pay the reasonable costs of the action, including attorney's fees. In order to reach that conclusion, however, the court must infer that Noel, in proposing "to actively participate" was talking about payment of costs and not about participating in the third-party action itself by having its attorney participate. The tenor of the letter seems to be that the attorney for American Hardware would, himself, take a part in the prosecution of claimant's claim against the responsible third party. Of course, this could not be. The claimant has a right to his or her own attorney in the prosecution of such action, and the employer or its carrier has no right to prosecute the action unless the injured employee or his estate refuses or fails to institute the third-party action within one year from the date of the injury. (Section 39-71-414(3), MCA.) That the insurer was entertaining a reservation about whether it would participate in the payment of attorney's fees is buttressed by the next item of correspondence from Noel, which was not sent until July 14, 1980, in which he stated:

"I can appreciate your concern over our principal's refusal to make a substantial advance to cover costs, as I am sure that Mrs. Sorum does not have the funds available to readily advance these funds. However, we would be agreeable to participating on a pro rata basis, the incurred costs of discovery, and would also furnish the services of our own attorney to assist you. I would question very seriously that we would have any obligation to participate in the cost of attorney's fees incurred to prosecute the declaratory judgment action.

"I wish to point out that the law clearly states that we are entitled to a 50% recovery of the total benefits we have paid, regardless of whether we

- 7 -

> participate in any manner. This, understandably,
> is one of the reasons why the company is not
> agreeable to making advances along the lines you
> have previously suggested." (Emphasis supplied)

No other interpretation of the foregoing language is possible except that the company was hedging with respect to sharing the payment of attorney's fees. The declaratory judgment referred to in the letter is the action that was brought by Safeco to set aside the insurance policy covering Doran. American Hardware was questioning any responsibility for its contribution to that action, although the proceeds of settlement which are now on the table arose from that action. It is clear that American Hardware misinterpreted its duties with respect to section 39-71-414 (2)(b). Under that section, if the company intended to share in the costs, it must not only share the costs of discovery, but also the attorneys fees. Again, the insurer is suggesting that its attorney would "assist" claimant's counsel in the action against the responsible third party. There is no legal basis for that suggestion under statutes applicable.

On July 17, 1980, counsel for the Sorums wrote to Noel indicating that American Hardware had refused to participate by sharing costs and fees, and that he was going ahead on the basis that the company had a 50% subrogation right.

Thereafter, when the settlement proceeds arrived in the form of a check from the responsible carrier, the parties were unable to agree on its division and the resulting proceedings before the Workers' Compensation Court that we have described above occurred.

There are no other references in the record, either in correspondence or by deposition from Noel, which would give us any further information as to the intent of American

Hardware to participate in this action, prior to the proceeds of the settlement being obtained, except as we have stated them here. We do not find therefrom that the insurer communicated to the claimants its intention to "pay a proportionate share of the reasonable cost of the action, including attorney's fees." Section 39-71-414(2)(b), MCA. Accordingly, we hold that the Workers' Compensation Court erred in determining that American Hardware is entitled to 100% subrogation rights in this case, and hold instead that it is entitled to but 50% subrogation. Section 39-71-414(2)(c), MCA.

## II

Should the rule against retroactive application of decisional law prevent application of the Swanson rule to the insurer's subrogation rights?

American Mutual Hardware cross appeals from the decision of the Workers' Compensation Court applying the Swanson rule in determining the subrogation rights of the insurer in this case. The Swanson rule was announced by us in Swanson v. Champion International Corporation (1982), ____ Mont. ____, 646 P.2d 1166, 39 St.Rep. 639.

As we said, Donald R. Sorum died on August 22, 1979. A petition was filed in the Workers' Compensation Court on September 22, 1980. The cause was heard by the Workers' Compensation Court on December 16, 1981, and was deemed submitted on February 2, 1982. On April 9, 1982, the Swanson decision was handed down. The Workers' Compensation Court issued its findings of fact and conclusions of law in this case on September 14, 1982. American Hardware contends that the court has made a retroactive application of the Swanson rule and that the company is entitled to have its subrogation

right determined according to Tuttle v. Morrison-Knudsen Company, Inc. (1978), 177 Mont. 166, 580 P.2d 1379.

American Hardware also contends that the decision in Swanson, supra, overruled Fisher v. Missoula White Pine Sash Company v. Michigan Mutal Liability Company (1974), 164 Mont. 41, 518 P.2d 795, and thus constitutes "new" decisional law which should not be given retroactive application.

The cross appeal misapprehends our holding in Swanson. We distinguished, rather than overruled, Fisher, supra. See 646 P.2d at 1173. We pointed out that the Fisher rule should no longer pertain because of changes made in the 1977 legislature on provisions of the Workman's Compensation Act, upon which Fisher had depended. We stated:

> "More important is the change that was made in the 1977 Montana Legislature of the provisions that relate to the protection of the employer through the exclusivity of the Workers' Compensation Act. In Fisher, this court placed great reliance on that part of former Section 92-204 RCM 1947, which stated, 'and in case of death shall bind his personal representative, and all persons having any right or claim to compensation for his injury or death,' as meaning that the recovery rights of the heirs were subject to the subrogation rights of the employer. 164 Mont. at 45, 518 P.2d at 797.

> "The 1977 amendment removed this language from the subrogation portions of former Section 92-204, and established a separate statute which related to the exclusivity of the Workers' Compensation Act as to the employer. The intent of the legislature that the heirs were bound as to exclusivity but not as to subrogation is now more clear. That statute now reads: ([here is set out the provisions of section 39-71-411]).

> "A study of the foregoing statute will demonstrate that the inclusion of the words 'all persons having any right or claim to compensation for his injury or death' is intended to bind those persons as to suits against the employer, not third parties. In that context, any reference to this language with respect to the subrogation rights in the succeeding statutes is to take the quoted language out of context and away from the subject to which it is intended to pertain. The language relates to exclusivity; under the present statutory scheme, it should not be construed to include the Workers'

Compensation subrogation provisions, for in none of the present subrogation provisions is there any indication that the legislature intended to include the rights of heirs within the employer's subrogation lien.

"We therefore conclude that under the present statutory scheme, as it applies to this case, and because of the intrinsic differences that exist now and have always existed in the source and effect of recoveries made in survival actions as distinguished from wrongful death actions, the subrogation rights of the employer or its insurer under the Workers' Compensation Act do not extend to recoveries made under wrongful death claims. To that extent, we distinguish Fisher v. Missoula White Pine Sash Company (1974), 164 Mont. 41, 518 P.2d 795." 646 P.2d at 1173, 39 St.Rep at 647.

The statutory changes to which we adverted in Swanson occurred in 1977. The 1977 amendments to the Workers' Compensation statutes preceded the occurrence in 1979 of the death of Donald Sorum, and also preceded the proceedings of the Workers' Compensation Court in this case by more than three years.

Even if arguendo, the application of Swanson in this case be considered as retroactive, American Hardware cannot bring itself within the rules requiring nonretroactivity. One of the factors which must be considered in determining nonretroactive application is whether application would be inequitable. LaRoque v. State & Alley (1978), 178 Mont. 315, 583 P.2d 1059, citing Chevron Oil v. Huson (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. American Hardware contends that in determining equity, we may not look at the affect on the Sorum claimants, but may only consider the affect of nonretroactivity on American Hardware & Mutual. However, we feel that equity is a two-sided coin.

This Court has repeatedly stated that under section 39-71-104, MCA, the Workers' Compensation Act is to be liberally construed in favor of the employee. In effect,

- 11 -

American Hardware & Mutual is contending here by seeking to avoid the Swanson rule that it may reach into the non-economic damages recovered under the wrongful death statutes in favor of the heirs in order to satisfy its subrogation rights. We can think of nothing more inequitable than allowing the insurer to go beyond the economic damages to invade the recovery made by the heirs for such items as the loss of comfort and society of the decedent suffered by the surviving heirs, and the loss of consortium by a surviving spouse. 646 P.2d at 1170. To hold in favor of American Hardware on this issue would be to lose sight of the factors that guided us to our decision in Swanson, supra. The cross appeal is, therefore, denied.

We, therefore, remand this cause to the Workers' Compensation Court with instructions to conduct such hearings as may be necessary and to make and enter its findings, conclusions and order determining the subrogation rights of the insurer in this case based on the guidance of this opinion.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

- 12 -

Mr. Justice John Conway Harrison dissenting:

I dissent.

The plaintiffs contend that the insurer is not entitled to 100 percent subrogation because the insurer did not participate in the third-party action. I disagree and would hold under 39-71-414, MCA, that there was sufficient showing of participation on the part of the insurer to entitle him to the 100 percent subrogation. See Tuttle v. Morrison-Knutson Co., Inc. (1978), 177 Mont. 166, 580 P.2d 1379, where this Court approved such a subrogation. The formula set forth in that case requires the insurer pay its proportionate share of the costs and attorney's fees and that amount could be computed <u>after settlement or judgment</u>. An inherent problem in the formula is that it is impossible to compute the proportionate share of attorney's fees and costs prior to settlement or judgment because the amount of the third-party recovery is unknown. I conclude the claimant may request the insurer advance all costs, including attorney's fees, as they are incurred.

The Workers' Compensation Act must be liberally construed in favor of the claimant, section 39-71-104, MCA. If the claimant requests the insurer to advance costs, "the insurer may elect not to participate in the cost of the action. If this election is made, the insurer waives 50 percent of its subrogation rights granted by this section." Section 39-71-414(2)(c), MCA.

The claimant's contention that the insured is not entitled to 100 percent subrogation because it failed to participate actively in a third-party action is, in my opinion, without merit. On January 4, 1980, the insurer wrote to the claimant's counsel stating: "we do wish to actively participate in the third-party action and thus protect our subrogation rights as per workers' compensation law." The insurer consistently held to this position and later offered to advance costs on a pro-rata basis if claimant's counsel would furnish it with receipts with the actual cost expenditures. The claimant's counsel did not furnish the

- 13 -

insurer with the receipts for actual cost expenditures until the third-party action was settled and the amount proved to be far less than what counsel for the insured originally suggested. Here the Workers' Compensation Court found the insured agreed to participate and is entitled to 100 percent subrogation. There is, in my opinion, substantial evidence to support the Workers' Compensation Court's finding and this Court should have upheld those findings. See Pinion v. H. E. Smith Construction Co. (1980), _____ Mont. ____ , 619 P.2d 167, 37 St.Rep. 1355; Head v. Missoula Service Company (1979), 181 Mont. 129, 592 P.2d 507.

There being substantial evidence to support the findings of the Compensation Court, I would uphold the findings of that court.

_____
Justice

We concur in the dissent of Mr. Justice Harrison.

_____

_____
Justices