No. 85-84

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

BEATRICE T. NEHRING, widow and surviving
heir of Harold W. Nehring, deceased; DONALD
D. NEHRING, Personal Representative of the
estate of Harold Nehring, deceased, and TRI-
STATE INSURANCE COMPANY OF MINNESOTA, a Corp.,

Plaintiffs and Appellants,

-vs-

EARL L. LaCOUNTE and JANICE C. LaCOUNTE,
d/b/a LENNY'S BAR,

Defendants, Third-Party Plaintiffs
and Respondents,

and

MICHAEL J. BOTTENSEK,

Defendant,

-vs-

INSURANCE COMPANY OF NORTH AMERICA, a corp.;
SEITZ INSURANCE AGENCY, and RODNEY LEMIEUX,
individually and as agent for Seitz Insurance
Agency and Insurance Company of North America,

Third-Party Defendants.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jacque Best; Habedank, Cumming, Best & Maltese,
Sidney, Montana
Gene R. Jarussi argued; Keefer, Roybal, Hanson, Stacey
& Jarussi, Billings, Montana

For Respondent:

Donald L. Harris argued; Crowley Law Firm, Billings,
Montana
Francis J. McCarvel, Glasgow, Montana
Richard F. Cebull; Anderson, Brown Law Firm, Billings,
Montana
Thomas Monaghan; Lucas & Monaghan, Miles City, Montana

For Amicus Curiae:

Rodney T. Hartman; Herndon, Harper & Munro; (Robert
Brust d/b/a Drifter's Tavern), Billings, Montana

Submitted: September 23, 1985
Decided: January 21, 1986

Filed: **JAN 21 1986**

Clerk

Honorable Frank I. Haswell, Retired Chief Justice, delivered the Opinion of the Court.

In a wrongful death and survival action against the operators of a Montana tavern who allegedly wrongfully served alcoholic beverages to a driver who later killed decedent in an automobile accident, the Roosevelt County District Court granted summary judgment to the tavern operators. We vacate and remand.

The accident occurred during the early morning hours of September 20, 1980 in North Dakota, about three miles west of Williston. Michael Bottensek drove the wrong way on a four-lane divided highway and struck head-on an oncoming west-bound vehicle driven by decedent Harold Nehring. Nehring and two passengers in the Bottensek vehicle, Patty Thoring and Jolene McGillis, were killed. Michael Bottensek and his brother, the other passenger in his vehicle, survived.

The events leading to this accident began on September 19, 1980. Bottensek, his brother, Patty and Jolene decided to celebrate Jolene's nineteenth birthday by going to Lenny's Bar in Bainville, Montana, about 35 miles from their homes in Williston, North Dakota. LaCountes are the owners and operators of this tavern. Bottensek had consumed four beers and smoked a joint of marijuana between 2:00 p.m. and 9:00 p.m., the time they left Williston. On their way to Lenny's Bar, Bottensek drank two more beers. He drank four of these six beers within the three hours prior to arriving at the tavern at about 10:00 p.m..

At Lenny's Bar, Bottensek drank about eight more beers during the next two or three hours. He stated in his deposition that he was drunk when he ordered his last beer.

2

He recalled that his speech was slurred, that he spoke with a "thick" tongue, and that he staggered when he left the bar. He also stated that he had no difficulty ordering or paying for drinks, he did not vomit or spit-up, and that he did not fall down, knock chairs over or bump into other people. According to the LaCountes and one of their employees, Bottensek did not appear drunk, could pay for drinks, did not slur or stagger and did not cause problems with other patrons. However, LaCountes also stated that Bottensek threatened to shoot Earl LaCounte and was ejected from the bar between 10:00 and 11:00 p.m.

Bottensek denied this act and stated that he left the tavern at about 1:00 a.m. because he was drunk, that his brother left about the same time, that they waited in the car until Patty and Jolene left at closing time an hour later, and that all four were drunk. Just before leaving, Patty and Jolene bought a fifth of lime vodka and a case of Budweiser beer.

When they left the parking lot, Bottensek drove east toward Williston. He had blank spots in his memory, but remembered having trouble driving. Apparently he stopped on the highway at one point because he recalled Patty getting into the driver's seat and telling him if he hurt Jolene's baby he would be in trouble. Jolene was pregnant at this time. He also recalled Patty saying she drove as badly as he did. After stopping in a rest area, Bottensek again got behind the wheel. The accident occurred about an hour after they left the tavern when, in a thick fog, Bottensek's vehicle crossed over into a west-bound lane and collided head-on with the Nehring vehicle. At the time of the accident, Bottensek's blood alcohol level was .20.

3

On February 19, 1982, the plaintiffs filed an action seeking damages (1) for the wrongful death of Harold Nehring and (2) for Nehring's damages which accrued prior to his death and survived in favor of his estate. Plaintiffs are his surviving widow and heir, the personal representative of his estate and his automobile insurer. Defendants are Michael Bottensek and the owners and operators of Lenny's Bar, the LaCountes.

The amended complaint contains three claims for relief:

(1) The tavern operators or their agents sold alcoholic beverages to Michael Bottensek when he was actually, apparently or obviously intoxicated in violation of § 16-3-301, MCA;

(2) the tavern operators or their agents violated North Dakota's dram shop act which applies to this action;

(3) the tavern operators or their agents negligently sold alcoholic beverages to Michael Bottensek causing him to become intoxicated to such an extent that he was unable to operate or control his motor vehicle.

Each of the three claims alleges proximate cause and resulting damages.

On October 2, 1984, the District Court granted the tavern operators' motion for summary judgment on all three claims. The court held that under Montana law, the tavern operator was liable only if he served the customer while he was in a helpless condition, of which there were no supporting facts, citing Runge v. Watts (1979), 180 Mont. 91, 580 P.2d 145. The court held the North Dakota dram shop act inapplicable, citing a recent decision of North Dakota's Supreme Court that this act had no extraterritorial effect, Thoring v. Bottensek (N.D. 1984), 350 N.W.2d 586. Finally,

4

the court found no common law liability of a tavern operator and refused to "legislate" on the matter.

Final judgment was entered in favor of the LaCountes and against plaintiffs pursuant to a Rule 54(b), M.R.Civ.P. certification. Plaintiffs appeal from the final judgment.

We rephrase the issues:

(1) Can a person injured off-premises by a patron of a licensee recover from the licensee who served the patron alcoholic beverages?

(2) Does a genuine issue of material fact preclude summary judgment?

Traditionally, at common law, no right of action existed against a seller of alcoholic beverages in favor of those injured by the intoxication of the purchaser. The reason usually given for this rule is that the consumption, rather than the furnishing, of the alcoholic beverages proximately caused the injury. This Court acknowledged and followed this rule in Nevin v. Carlasco (1961), 139 Mont. 512, 365 P.2d 637, which concerned a tavern operator's liability to protect patrons from other patrons. We stated there that:

> . . . The rule followed by most courts is that when damage arises from voluntary intoxication, the seller of the intoxicant is not liable in tort for the reason that his act is not the efficient cause of the damage. The proximate cause is the act of him who imbibes the liquor.
>
> [Plaintiff] was obliged to prove a set of circumstances which created a duty to the injured patron and facts that would prove a breach of that duty. (Citation omitted.)

139 Mont. at 515, 365 P.2d at 639.

In later cases, this Court acknowledged that Montana statutorily prohibits the sale of alcoholic beverages to

5

minors and intoxicated persons. We declined to use the statutes as a basis for liability under the circumstances presented in those cases. In Folda v. City of Bozeman (1978), 177 Mont. 537, 582 P.2d 767, we held that the victim's voluntary intoxication prevented her from recovering because it was the proximate cause of her death and she had disregarded her duty to use due care. Swartzenberger v. Billings Labor Temple Assn. (1978), 179 Mont. 145, 586 P.2d 712, discusses both the lack of a Montana dram shop act and the cases mentioned above. We denied recovery to the plaintiff because of his contributory negligence in violating statutory law and drinking. We distinguished Deeds v. United States (D. Mont. 1969), 306 F.Supp. 348, as presenting a claim of an injured third party rather than a claim by the imbiber. The most recent Montana case, Runge v. Watts (1979), 180 Mont. 91, 589 P.2d 145, concerned the liability of a social host furnishing liquor to a minor who then caused an accident injuring a third party. We held that the proximate cause of plaintiff's injuries was the driver's drinking, rather than defendant's serving of alcohol. Of these cases, only Deeds, supra, addresses a tavern operator's liability for off-premises injuries to a third party injured by a patron of the tavern.

Section 16-3-301(2), MCA, originally enacted as part of the Montana Beer Act in 1933, provides:

> It shall be unlawful for any licensee, his or her employee or employees, or any other persons to sell, deliver, or give away or cause or permit to be sold, delivered, or given away any alcoholic beverage to:
>
> (a) any person under 19 years of age;

> (b) any intoxicated person or any person
> actually, apparently, or obviously
> intoxicated.

Section 16-6-304, MCA, originally enacted as part of the State Liquor Control Act of Montana in 1933, provides:

> (1) No store manager, retail licensee, or any employee of a store manager or retail licensee may sell any alcoholic beverage or permit any alcoholic beverage to be sold to any person apparently under the influence of an alcoholic beverage.
>
> (2) No person may give an alcoholic beverage to a person apparently under the influence of alcohol.

Both sections remained in the Code when the Legislature edited and amended portions of Title 16 and then re-enacted it in 1975. As we noted in Fletcher v. Paige (1950), 124 Mont. 114, 220 P.2d 484, the Montana Beer Act and the State Liquor Control Act were companion bills. "These statutes are in pari materia and must be construed together . . . [as] one homogenous and consistent body of law." (Citations omitted.) (Emphasis in original.) 124 Mont. at 116-117, 220 P.2d at 485. This Court has a duty to reconcile such statutes, consistent with legislative intent, where possible. Fletcher, 124 Mont. at 119, 220 P.2d at 487. Thus, we consider both sections in this appeal.

We recognize that the Legislature did not enact these alcoholic beverage control statutes to provide a civil remedy to persons injured as the result of a violation of those laws. The violation of statutes is negligence as a matter of law when the purpose of the statute is to protect a class of persons, the plaintiff is a member of that class, and the defendant is a person against whom a duty is imposed. Azure v. City of Billings (1979), 182 Mont. 234, 240-241, 596 P.2d 460, 464. The purpose of the statute also must be to protect

7

against the kind of injury received by the plaintiff. Rauh v. Jensen (1973), 161 Mont. 443, 507 P.2d 520. Here, the stated purposes of the statutes are "the protection of the welfare, health, peace, morals, and safety of the people of the state." Section 16-1-101, MCA; see also § 16-1-103, MCA. The Supreme Court of Arizona characterized a similar enactment as having the legislative purpose "to regulate the business [of selling alcoholic beverages] rather than enlarge civil remedies." (Bracketed phrase added.) (Emphasis in original.) Collier v. Stamatis (Ariz. 1945), 162 P.2d 125, 127, cited in Ontiveros v. Borak (Ariz. 1983), 667 P.2d 200, 210. Sections 16-3-301(2) and 16-6-304, MCA, are part of two acts enacted to regulate the business of selling liquor and beer. Nonetheless, they were intended to protect the people of the state generally and the interests of the state rather than to protect against any particular kind of injury or provide a civil remedy. Accordingly, we will not hold a violation of the alcoholic beverage control statutes to be negligence as a matter of law.

The violation of a statute, although not negligence per se, nevertheless may be relevant in determining whether a defendant's conduct was negligent, i.e. in fixing a standard against which negligence can be measured. Where the statute does not provide for civil liability, the decision to adopt the statute as defining a standard is a judicial one. Restatement (Second) of Torts §286 comment d, cited in Ontiveros, 667 P.2d at 210; also McClellan v. Tottenhoff (Wyo. 1983), 666 P.2d 408, 413. In the seminal case allowing recovery by an injured third party from a tavern keeper, Rappaport v. Nichols (N.J. 1959), 156 A.2d 1, the New Jersey Supreme Court held that a violation of an enactment similar

8

to §§ 16-3-301 and 16-6-304, MCA, was evidence of negligence. That court noted the restrictions were intended for the protection of members of the general public, not just for the protection of the minors and intoxicated persons listed in the enactments. Rappaport, 156 A.2d at 8. In Rappaport, the court stated:

> The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another . . . Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. (Citations omitted.)

Rappaport, 156 A.2d at 8. Such is the case here.

An unreasonable risk of harm is more likely under present day conditions than in the past, when the common law bar to recovery was a majority position. ". . . [T]his is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent" Rappaport, 156 A.2d at 8-9, cited in Deeds, 306 F.Supp. 348, 355. Current conditions in Montana are such that the literal application of the common law rule has become unjust. "When the reasons of a rule ceases, so should the rule itself." Section 1-3-201, MCA. Therefore we judicially adopt the alcoholic beverage control statutes as furnishing a standard against which negligence or due care can be measured. Accordingly, a violation thereof is evidence of negligence.

> In any negligence case, the plaintiff must establish certain elements: (1) that the defendant owed a duty recognized in law to the plaintiff, (2) that she breached the duty, (3) that the breach was the cause of the

9

> plaintiff's injury, and (4) that the
> plaintiff was damaged.

46 Mont.L.Rev. 381, 382 (1985), Bender, Tort Liability for Serving Alcohol: An Expanding Doctrine. Both Deeds, 306 F.Supp. 348, and Johnson v. United States (D. Mont. 1980), 496 F.Supp. 597, considered Montana law on negligence and held the seller of alcoholic beverages liable to third parties injured by an intoxicated patron. After establishing the seller's duty to the injured party, Deeds discussed the element of causation and held that the operators who served alcoholic beverages

> . . . could reasonably foresee or
> anticipate some accident or injury as a
> reasonable and natural consequence of
> their illegal and negligent acts,
> particularly in view of the ever
> increasing incidence of serious
> automobile accidents resulting from
> drunken driving.

306 F.Supp. at 361. Deeds applied the common law negligence rule that if an intervening cause is one which might be reasonably foreseen as probable or is one which the defendant might reasonably anticipate under the circumstances, that cause will not cut off the defendant's liability. We discussed this rule of foreseeability in Reino v. Montana Mineral Land Development Co. (1909), 38 Mont. 291, 296, 99 P. 853, 855, and stated that:

> It is sufficient if the facts and
> circumstances are such that the
> consequences attributable to the wrongful
> conduct charged are within the field of
> reasonable anticipation; that such
> consequences might be the natural and
> probable results thereof, though they may
> not have been specifically contemplated
> or anticipated by the person so causing
> them. (Citations omitted.)

We adopt this approach in the case at bar and hold that consumption of the alcoholic beverages served, subsequent

driving, and the likelihood of an injury-producing accident are foreseeable intervening acts which do not relieve the tavern operator of liability for negligence.

The earlier Montana cases, Folda, 177 Mont. 537, 582 P.2d 767, and Swartzenberger, 179 Mont. 145, 586 P.2d 712, are not controlling authority for the case at bar. Those cases both concerned injury to the imbiber rather than a third person and found no liability on the basis of the imbiber's contributory negligence. Runge, 180 Mont. 91, 589 P.2d 145, also is distinguishable as it concerns the absence of liability of a social host who furnished alcoholic beverages to a minor.

Respondents argue that if this Court overrules Runge, 180 Mont. 91, 589 P.2d 145, any new law should be applied prospectively only. They rely on the statement in Runge that no cause of action existed unless the imbiber was furnished alcoholic beverages while "in such a state of helplessness . . . as to be deprived of his willpower or responsibility for his behavior." (Citation omitted.) 180 Mont. at 93, 589 P.2d at 146-147. The term "helplessness" implies a far stricter requirement than the language of the alcoholic beverage control statutes. As discussed above, the language in the statutes defines the standard of care to be used. In addition, the language from Runge, quoted above, was dicta. In Runge we declined to impose liability on a social host who furnished alcoholic beverages to a minor in favor of those injured as a consequence of the minor's intoxication. The reasoning behind this holding was that the minor's drinking rather than the social host's serving of beer proximately caused plaintiff's injuries. The mention of "helplessness" was unnecessary to this holding. We are not

required to give precedential value to dicta. Montana Human Rights Division v. City of Billings (Mont. 1982), 649 P.2d 1283, 1287, 39 St.Rep. 1504, 1508. This judicial language was not intended to change the meaning of the statutory language and does not refer to or change Montana law regarding the principles of causation or duty owed in negligence. Nonetheless, Runge is bottomed on a statement of law that must be addressed, viz. that the drinking of the intoxicating beverage, not the furnishing thereof, is the proximate cause of any subsequent injury (subject to the "helplessness" exception). This Neanderthal approach to causation exempts the purveyor of alcoholic beverages from liability without regard to his own negligence or fault. To the extent Runge may be read to so hold, we expressly overrule it.

This Court set forth three factors to consider before adopting a rule of nonretroactive application in LaRoque v. State (1978), 178 Mont. 315, 583 P.2d 1059.

> First, the decision to be applied nonretroactively must establish a new principle of law either by overruling established precedent on which litigants have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the merits of each case must be weighed by looking to the history, purpose and effect of the rule in question and whether retroactive application will further or retard its operation. Finally, the inequity of retroactive application must be considered, for where substantial inequity will result by such application, a ruling of nonretroactivity is proper.

LaRoque, 178 Mont. at 319, 583 P.2d at 1061, citing Chevron Oil v. Huson (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. We applied this three part test in Jensen v. State Dept. of Labor and Industry (Mont. 1984), 689 P.2d 1231, 41

12

St.Rep. 1971, and Sorum v. Rieder and Co. (Mont. 1983), 666 P.2d 1221, 40 St.Rep. 1120.

With respect to the first factor, respondents argue that they relied on the statement in Runge, 180 Mont. 91, 589 P.2d 145, that a bar owner is liable only if the patron was served while helplessly intoxicated. However, respondents had an obligation to comply with the stricter requirements of the alcoholic beverage control statutes as well. Thus, the reliance argument is not persuasive. In the second factor, a prospective application would condone disregard for these alcoholic beverage control statutes rather than further their purpose or operation. Jensen, 689 P.2d at 1233, 41 St.Rep. at 1974. Finally, respondents carry the burden of showing the substantial inequity of retroactive application. LaRoque, 178 Mont. at 320, 583 P.2d at 1061. This case only permits certain unlawful conduct by respondents to be used as evidence of their negligence. This is not the kind of significant hardship that supports a ruling of nonretroactivity. Accordingly, we will not limit the holding of this case to a prospective application as urged by the respondents on appeal.

The second issue concerns whether genuine issues of material fact exist precluding summary judgment. Generally, issues of negligence are not susceptible to summary judgment and are better determined at trial. Brown v. Merrill Lynch, Pierce, Fenner and Smith, Inc. (1982), 197 Mont. 1, 10, 640 P.2d 453, 458. In this case there are a number of questions of material fact that remain unanswered, for example, Michael Bottensek's degree of actual, apparent or obvious intoxication, when and how much alcoholic beverages LaCountes

served to Michael Bottensek, and the time that Michael Bottensek left the bar, to name a few.

We therefore vacate the summary judgment and the final judgment entered thereon by the District Court. We remand to the District Court for further proceedings.

Honorable Frank I. Haswell,
Retired Chief Justice,
Sitting in Place of Mr. Justice
L. C. Gulbrandson

We concur:

Chief Justice

Justices