FILED

08/31/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0480

DA 20-0480

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 215

KYLE R. BABCOCK,

      Plaintiff and Appellant,

   v.

CASEY'S MANAGEMENT, LLC,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-15-2019-75
                Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Quentin M. Rhoades, Nicole L. Siefert, Rhoades Siefert & Erickson PLLC,
          Missoula, Montana

      For Appellee:

          Reid J. Perkins, Worden Thane P.C., Missoula, Montana

Submitted on Briefs:  April 28, 2021

Decided:  August 31, 2021

Filed:

                                  _____
                                        Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1      Kyle R. Babcock appeals the July 2020 judgment of the Montana Eleventh Judicial District Court, Flathead County, granting defendant, Casey's Management, LLC (Casey's), summary judgment on his asserted "negligence (liquor liability)" and "negligence (premises liability)" claims.  We address the following dispositive issue:

> *Whether the District Court erroneously concluded that Babcock's co-pled "negligence (premises liability)" claim was subject to the two-year Montana Dram Shop Act statute of limitations?*

We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKROUND

¶2      On the night of January 19th into the early morning of January 20, 2017, Babcock attended a music concert at Casey's, a regulated establishment in Whitefish, Montana, licensed to sell alcoholic beverages under §§ 16-1-101 through -104, 16-3-101, and 16-6-301, MCA, et seq. (Montana Alcoholic Beverage Code).  While Babcock danced with friends near the stage, Brendan Windauer and a female companion pushed their way through the crowd toward the stage, resulting in a brief shoving match between he and Babcock.  After they had disengaged, Windauer allegedly turned around and unexpectedly sucker-punched Babcock in the face, resulting in facial bone fractures requiring medical care.  At the time, Windauer was under the legal drinking age (age 21) and had allegedly consumed one or more alcoholic beverages served or provided by Casey's.  On May 18, 2017, through counsel, Babcock served Casey's with written notice pursuant to § 27-1-710, MCA (commonly known as the Montana Dram Shop Act) of his intent to sue

2

for damages resulting from the Windauer assault at the bar in January. Babcock did not ultimately follow up with a district court complaint, however, until January 28, 2019, two years and eight days after the assault.

¶3 Along with a derivative punitive damages claim, Babcock pled two base tort claims against Casey's—a "negligence (liquor liability)" claim and a separate "negligence (premises liability)" claim. In essence, the "negligence (liquor liability)" claim asserted that Casey's negligently provided the underage Windauer with alcohol, either with, as referenced in § 27-1-710(3)(a), MCA, knowledge that he was underage or without making a reasonable attempt to determine his age. The separately pled "negligence (premises liability)" claim preliminarily "reallege[d] each preceding paragraph" of the complaint, including all common factual averments and the previously pled "negligence (liquor liability)" claim. The second negligence claim then further distinctly alleged, *inter alia*, that Casey's: (1) knew that Windauer was an "obstreperous person" with a "propensity for fighting"; (2) nonetheless served or provided him with alcohol despite reason to believe that he was underage and without "reasonable attempt to determine [his] age" and (3) then allowed him to remain on the premises despite knowledge or reason to believe that his "obstreperous and aggressive" conduct "endangered others." In essence, the "negligence (premises liability)" claim asserted that Casey's breached its common law duty of reasonable care by "fail[ing] to provide a staff adequate to police its premises," allowing a dangerous man (Windauer) to remain on the premises, "failing to take suitable measures" to protect Babcock from Windauer, and "fail[ing] to [sooner] intervene in [their]

3

altercation." In its amended answer, Casey's: (1) generally denied all essential claim allegations; (2) asserted various affirmative defenses; (3) asserted various third-party tort claims against Windauer; and (4) asserted a negligence-based statutory contribution claim against any other unnamed third parties "that may have served" alcohol to Windauer prior to his arrival at Casey's and or who "failed to . . . [report] the shoving match," the "threat" posed by Windauer, or otherwise "failed to intervene."

¶4 On the asserted grounds that § 27-1-710(6), MCA (two-year Dram Shop Act statute of limitations), time-barred Babcock's base tort claims, and that the derivative punitive damages claim thus failed in turn due to lack of a requisite compensatory damages predicate, Casey's moved for summary judgment on all claims pursuant to M. R. Civ. P. 56. Tacitly acknowledging without concession that his "negligence (liquor liability)" claim was subject to the two-year Dram Shop Act statute of limitations, Babcock asserted that his separate "negligence (premises liability)" claim was based on an independent theory of negligence not subject to the Act because it was not based or dependent on a causative link between the furnishing and consumption of alcohol and the related harm subsequently caused by the consumer (but rather the alleged breach of the independent common law duty of tavern owners and agents to use reasonable care to protect fellow patrons from obstreperous and violent persons).[1] He thus asserted that his separate "negligence (premises liability)" claim was exclusively governed by the general three-year tort statute

---

[1] In defending against the summary judgment motion, Babcock was represented by new counsel who was not involved with the drafting of the subject complaint.

4

of limitations.[2] Finding no genuine issue of material fact on the Rule 56 record that the alleged negligence and resulting harm occurred more than two years before the filing of the subject complaint,[3] the District Court concluded that both of Babcock's base tort claims were, as referenced in § 27-1-710, MCA, claims for "injury or damage arising from an event involving the person who consumed" an alcoholic beverage allegedly furnished by Casey's, and thus time-barred by the two-year Dram Shop Act statute of limitations. Babcock timely appeals.

## STANDARD OF REVIEW

¶5     We reviews grants or denials of summary judgment de novo for conformance with M. R. Civ. P. 56. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623. Summary judgment is proper only when the pleadings, discovery and disclosure materials, and affidavits of record manifest "no genuine issue as to any material fact" and a party "is entitled to judgment as a matter of law." M. R. Civ. P 56(c)(3). A genuine issue of material fact is "an issue of inconsistent fact, material to the elements of a claim or defense at issue," and thus "not amenable to judgment as a matter of law." *Davis v. Westphal*, 2017 MT 276, ¶ 12, 389 Mont. 251, 405 P.3d 73 (internal citations omitted).[4]

---

[2] See § 27-2-204(1), MCA.

[3] Based on Babcock's complaint allegation, and Casey's responsive admission, that the subject incident occurred on January 20, 2017, the court rejected Babcock's assertion that a genuine issue of material fact precluded summary judgment based on Casey's briefing citation to an inadmissible police report as the factual basis for the asserted incident date.

[4] *See also* §§ 26-1-202 and -203, MCA ("all questions of fact . . . must be decided by" and in the judgment of the trier of fact "except as otherwise provided by law").

Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law reviewed de novo for correctness. *Davidson v. Barstad*, 2019 MT 48, ¶ 17, 395 Mont. 1, 435 P.3d 640.

¶6     Our role in construing the meaning or effect of statutes is to simply "ascertain and declare what is in terms or in substance contained therein," not "insert what has been omitted" or "omit what has been inserted." Section 1-2-101, MCA. We must, to the extent possible, effect the manifest intent of the Legislature in accordance with the clear and unambiguous language of its enactments in context, without resort to other means of construction. *Larson v. State*, 2019 MT 28, ¶ 28, 394 Mont. 167, 434 P.3d 241 (citing *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499). We must do so by first attempting to construe the subject term or provision in accordance with the plain meaning of its express language, in context of the statute as a whole, and in furtherance of the manifest purpose of the statutory provision and the larger statutory scheme in which it is included. *Mountain Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 27, 400 Mont. 484, 469 P.3d 136 (citing § 1-2-106, MCA, and *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666); *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 11, 399 Mont. 166, 459 P.3d 850 (citing *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426 and *S.L.H. v. State Comp. Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948); *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439. In similar regard, except where in conflict with our constitution and resulting statutory law, the common law is an integral part of the law of

6

this state. *See* §§ 1-1-105 and -107 through -109, MCA. The Legislature is thus presumed to act with full knowledge of the pertinent common law at the time of new enactments. *Sampson v. Nat'l Farmers Union Prop. & Cas. Co.*, 2006 MT 241, ¶ 20, 333 Mont. 541, 144 P.3d 797. In attempting to discern and effect the manifest intent of the Legislature, we must therefore construe statutes in relation to the pertinent common law as part of the overall and uniform system of laws of which our constitution, statutes, and non-conflicting common law rules are constituent parts. *See Sampson*, ¶ 20; *Gaustad v. City of Columbus*, 265 Mont. 379, 382, 877 P.2d 470, 472 (1994); *Swanson v. Hartford Ins. Co. of the Midwest*, 2002 MT 81, ¶ 22, 309 Mont. 269, 46 P.3d 584; *In re Adoption of Voss*, 550 P.2d 481, 486 (Wyo. 1976); 2B *Sutherland Statutory Construction* § 50:1, *Interpretation with reference to the common law* (7th ed. 2021). Where "technical words and phrases . . . have acquired a peculiar" or special legal meaning, we must construe them in accordance with that meaning, rather than their plain meaning in ordinary usage. Section 1-2-106, MCA. In construing several statutory "provisions or particulars," we must, to the extent possible, construe them in harmony and give effect to all. Section 1-2-101, MCA.

## DISCUSSION

¶7     *Whether the District Court erroneously concluded that Babcock's co-pled "negligence (premises liability)" claim was subject to the two-year Montana Dram Shop Act statute of limitations?*

Tacitly acknowledging without concession that his asserted "negligence (liquor liability)" claim was time-barred by the two-year Dram Shop Act statute of limitations, Babcock again asserts that his separate "negligence (premises liability)" claim is an independent

7

common law tort claim not subject to the Act. He contends that the District Court erroneously reached a contrary "conclusion based o[n] the single word 'event'" as referenced in § 27-1-710, MCA, "without [proper] consideration [of] the legislative history or purpose behind the Act." He continues that:

> [n]one of the policy reasons behind the Dram Shop Act are advanced by precluding common law negligence actions in situations similar to this case. Where the Dram Shop Act was passed to promote the responsible service of alcohol, the District Court's insertion of an "exclusive remedy" provision into the Act accomplishes the opposite. Bars will be rewarded for violating the [A]ct by having all possible claims against them . . . limited to a two-year statute of limitations, even if the service of alcohol played little to no part in the resulting injury to third-party patrons. . . . [U]nder the District Court's reasoning, the fact that Windauer had any alcohol at all somehow justifies offering the extra protection to the bar with a shortened statute of limitations, thereby transforming the Dram Shop Act into an affirmative defense. This interpretation goes far beyond what is written in the . . . Act [or its intended purpose].

In that regard, Babcock further asserts that the District Court "failed to properly consider" our ruling in *Harrington v. Crystal Bar, Inc.*, 2013 MT 209, 371 Mont. 165, 306 P.3d 342, "which dismissed a dram shop claim but allowed a similar . . . premises liability claim to proceed." An understanding of the history and state of the Dram Shop Act is thus essential to the resolution of this case.

A. History and Current State of Montana Dram Shop Liability.

¶8　　"Dram shop" is an old English term for "[a] place where alcoholic beverages are sold," such as "a bar or saloon." DRAM SHOP, *Black's Law Dictionary* (11th ed. 2019). Dram shop liability and liquor liability are general references to the civil tort "liability of a commercial seller of alcoholic beverages for personal injury caused by an intoxicated

8

customer" and, by extension, similar liability claims against other "citizens for personal injury caused by an intoxicated social guest." DRAM-SHOP LIABILITY, *Black's Law Dictionary* (11th ed. 2019). Before and after national Prohibition in the United States, many states enacted Dram Shop Acts—some to newly create or expand dram shop liability and others to limit preexisting common law dram shop liability. DRAM-SHOP ACT, *Black's Law Dictionary* (11th ed. 2019); Daphne D. Sipes, *The Emergence of Civil Liability for Dispensing Alcohol: A Comparative Study*, 8 Rev. Litig. 1, 3-6 (1988).

¶9 After Prohibition ended in 1933, Montana enacted and has since maintained a comprehensive statutory scheme providing for state control of the distribution and use of alcoholic beverages. *See, e.g.*, §§ 16-3-101, -201, -301, and -401, MCA. *Inter alia*, Montana's alcoholic beverage control statutes have since generally prohibited state licensees and others from selling or providing alcoholic beverages to underage and apparently intoxicated persons. Sections 16-3-301(4)(a)-(b), 16-6-304, and -305(1), MCA. Historically, however, Montana had no dram shop Act providing a statutory remedy for injuries and damages resulting from the sale or provision of alcoholic beverages to others. Moreover, regardless of the unequivocally clear provisions of Montana's alcoholic beverage control statutes prohibiting the sale or provision of alcohol to underage or apparently intoxicated persons, two prevailing Montana common law rules effectively precluded dram shop liability in Montana. Under the duty element of a negligence claim, persons who sold or provided alcoholic beverages to others generally owed no legal duty of care to them or third parties except under narrow circumstances where the recipient was

9

in "such a state of helplessness . . . as to be deprived of his willpower or responsibility for his behavior." *Runge v. Watts*, 180 Mont. 91, 93-94, 589 P.2d 145, 146-47 (1979) (declining to recognize common law dram shop liability on a negligence per se theory based on violation of alcohol control statutes and holding that recognition of "such a civil [remedy]" was more properly a matter for legislative determination – citations omitted). Next, under the causation element of a negligence claim, the "proximate cause" of injury resulting from the voluntary consumption of alcohol was, as a matter of law, the related tortious conduct of the consumer, not the antecedent sale or provision of alcohol thereto. *Runge*, 180 Mont. at 94, 589 P.2d at 147; *Nevin v. Carlasco*, 139 Mont. 512, 513-16, 365 P.2d 637, 637-39 (1961) (noting narrow circumstances independently giving rise to the common law tavern-keeper duty of reasonable care to protect patrons from obstreperous or violent fellow patrons but affirming nonsuit of third-party dram shop claim based on lack of "proximate cause").[5]

¶10 In 1986, however, we recognized for the first time the existence of common law dram shop liability by holding that, though §§ 16-3-301(2), 16-6-304, and -305(1), MCA

---

[5] *Accord Swartzenberger v. Billings Labor Temple Ass'n*, 179 Mont. 145, 150-52, 586 P.2d 712, 715-16 (1978) ("proximate cause" of fatal fall of intoxicated bar patron was decedent's contributory negligence (pre-statutory comparative negligence) rather than the antecedent over-service of alcohol thereto), *overruled by Bissett v. DMI, Inc.*, 220 Mont. 153, 157, 717 P.2d 545, 547 (1986); *Folda v. Bozeman*, 177 Mont. 537, 545-46, 582 P.2d 767, 772 (1978) ("proximate cause" of drowning death of intoxicated bar patron was decedent's contributory negligence (pre-statutory comparative negligence), not the antecedent over-service of alcohol thereto), *overruled by Bissett*, 220 Mont. at 57, 717 P.2d at 547. Note that we have since recognized that contributory negligence is *not* an intervening cause-in-fact but rather a contributing cause-in-fact subject to the multiple causation-in-fact "substantial factor" test. *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 371, 916 P.2d 122, 139-40 (1996).

(1985) (prohibiting sale or provision of alcoholic beverages to underage and apparently intoxicated persons – now, §§ 16-3-301(4), 16-6-304, and -305(1)(a)-(b), MCA, as amended), could not serve as predicate statutory duties for claims of negligence per se, they nonetheless could serve as relevant *evidence* of the applicable *standard of care* under the universal common law duty of reasonable care under the circumstances. *Nehring v. LaCounte*, 219 Mont. 462, 468-71, 712 P.2d 1329, 1333-35 (1986) (overservice of intoxicated patron case – overruling *Runge*); *Bissett v. DMI, Inc.*, 220 Mont. 153, 156-57, 717 P.2d 545, 546-47 (1986) (service of underage patron case).[6] Under the causation element of a negligence claim, we further recognized for the first time that the "likelihood of an injury-producing accident" was, as a matter of law, a reasonably foreseeable result in modern society of serving alcohol to underage and intoxicated persons, as prohibited by §§ 16-3-301(2), 16-6-304, and -305(1), MCA (1985). *Nehring*, 219 Mont. at 469-70, 712 P.2d at 1334-35; *Bissett*, 220 Mont. at 157, 717 P.2d at 547. We thus held that a consumer's voluntary consumption of alcohol was *no longer* an independent intervening cause breaking the chain of causation as a matter of law between the alcohol provider and subsequent injury caused by the consumer. *Nehring*, 219 Mont. at 469-70, 712 P.2d at 1334-35; *Bissett*, 220 Mont. at 157, 717 P.2d at 547-48. *See also Jevning v. Skyline Bar*,

---

[6] In precluding use of violations of §§ 16-3-301(2), 16-6-304, and -305(1), MCA (1985), as negligence per se predicates, we reasoned that "the Legislature did not enact these alcoholic beverage control statutes to provide a civil remedy to persons injured as a result of a violation of those laws," but instead for the "stated [general] purposes of . . . 'protection of the welfare, health, peace, morals, and safety of the people of the state.'" *Nehring*, 219 Mont. at 468, 712 P.2d at 1333 (citing §§ 16-1-101 and -103, MCA (1985)).

11

223 Mont. 422, 424, 726 P.2d 326, 327 (1986) (applying *Nehring* and *Bissett*); *Cusenbary v. Mortensen* (*Cusenbary I*), 1999 MT 221, ¶¶ 25-39, 296 Mont. 25, 987 P.2d 351 (citing *Nehring* and *Jevning* in re independent intervening causes).

¶11 However, in an off-year special session, the Legislature immediately reacted to our holdings in *Nehring* and *Bissett* by enacting the Dram Shop Act to significantly limit the expanded scope of common law dram shop liability recognized in those cases. *See* § 27-1-710(1) (1986 Sp. Mont. Laws ch. 1, § 1 – "purpose of this section is to set statutory criteria governing the liability of a person or entity that furnishes an alcoholic beverage for injury or damage arising from an event involving the person who consumed the beverage"); H.R. 13, 49th Leg., Sp. Sess. (1986), *House Judiciary Committee Hearing Minutes in re HB 13* (Mar. 26, 1986); *Senate Business and Industry Committee Hearing Minutes in re HB 13* (Mar. 28, 1986). Construed as a whole in context of the preexisting common law established in *Nehring* and *Bissett,* the Act effectively limited the *duty element* of the common law dram shop negligence claim by first precluding tort liability based in whole or in part on "a provision or a violation of a provision of Title 16," MCA, and then effectively superseding and replacing the previously-recognized Title 16-based common law standards of care with more limited predicate tort liability duties prohibiting persons who "furnish[] . . . an alcoholic beverage" to another from "furnishing" it to any "consumer" who:

(a)    is "under the legal drinking age" and who the furnisher either knows to be "underage" or whose age the furnisher fails to "make a reasonable attempt to determine";

12

(b)      is "visibly intoxicated"; or

(c)      the "furnishing person forced or coerced" to consume alcohol or advised "that the beverage contained no alcohol."

*See* § 27-1-710(2)-(3), MCA (1986) (barring dram shop liability based in whole or in part on "a provision or a violation of a provision of Title 16,"[7] and further declaring that "[f]urnishing . . . an alcoholic beverage" to another "is not a cause of, or *grounds for* finding the furnish[er] liable for[] injury or damage wholly or partly arising from any event involving the person who consumed the beverage" except under certain enumerated circumstances – emphasis added); H.R. 13, 49th Leg., Sp. Sess. (1986), *House Judiciary Committee Hearing Minutes in re HB 13* (Mar. 26, 1986); *Senate Business and Industry Committee Hearing Minutes in re HB 13* (Mar. 28, 1986); *House and Senate Journals*, 49th Leg., Sp. Sess., pp. 41, 45, 55-56 (Mar. 1986). *Compare Nehring*, 219 Mont. at 466-69, 712 P.2d at 1332-34; *Bissett*, 220 Mont. at 156-57, 717 P.2d at 546-47. Section 27-1-710(2) and (3), MCA (1986) thus replaced the Title 16-based standard of the predicate common law duty of reasonable care for dram shop liability with more limited statutory duties of care, the violation of which effectively constitutes negligence per se. *See* § 27-1-710(2)-(3), MCA (1986); *Nehring*, 219 Mont. at 466-69, 712 P.2d at 1332-34 (in re duty element of common law dram shop claims); *Bissett*, 220 Mont. at 156-57, 717 P.2d at 546-47 (same). *Compare Nehring*, 219 Mont. at 469-70, 712 P.2d at 1334-35 (in re foreseeability of harm as a matter of law, *i.e.*, independent intervening causation); *Bissett*,

---

[7] See §§ 16-3-301(2), 16-6-304, and -305(1), MCA (1985).

13

220 Mont. at 157, 717 P.2d at 547-48 (same). *See also Harrington*, ¶¶ 22-26 (affirming grant of summary judgment on asserted "liquor liability"/"dram shop" claim based on lack of proof that bar furnished alcohol to third-party combatant involved in subject bar fight or that he was visibly intoxicated as required by § 27-1-710(3), MCA); *Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶¶ 24-25 and 28, 354 Mont. 133, 227 P.3d 42 (characterizing Act as providing "a remedy upon proof it was violated" but then recognizing it as merely effecting a "legislative alteration of the elements" of a negligence claim); *Filip v. Jordan*, 2008 MT 234, ¶¶ 13-14, 344 Mont. 402, 188 P.3d 1039 (Dram Shop Act did not create a "new . . . private right unknown to the common law" and claims subject to Act are "not a liability created by statute" – legislative "alter[ation] [of] common law causes of action" does not render "the resulting cause of action" one "created by statute"); *Zempel v. Liberty*, 2006 MT 220, ¶ 5 n.1, 333 Mont. 417, 143 P.3d 123 (Dram Shop Act "merely 'sets statutory criteria'" which "limit[] the grounds on which [dram shop] liability may rest"); *Cusenbary I*, ¶¶ 21-39 (analyzing foreseeability of harm as a matter of law in re independent intervening causes under causation element of Dram Shop Act-limited, negligence-based dram shop liability claim); *Meech v. Hillhaven W., Inc.*, 238 Mont. 21, 33, 776 P.2d 488, 495 (1989) (noting Dram Shop Act as an example of a statute "constrict[ing]" preexisting liability); *Jevning*, 223 Mont. at 424-25, 726 P.2d at 328 (citing the express legislative purpose of the Act in context of holding that the Act was not retroactively applicable to negligence-based *Nehring/Bissett* common law dram shop liability claims). Notably, the new Dram Shop Act did not substantively limit or alter the

14

causation and damages elements of negligence-based common law dram shop claims, thus leaving intact our *Nehring* holding that the voluntary consumption of alcohol was no longer an independent intervening cause that, as a matter of law, broke the chain of causation-in-fact between the alcohol provider and subsequent injury caused by the ensuing tortious conduct of the consumer. *See* § 27-1-710, MCA (1986); *Cusenbary I*, ¶¶ 25-39.

¶12　In 1989, the Legislature amended §§ 16-6-305 and 27-1-710, MCA, to clarify that certain persons (*i.e.*, parents, guardians, physicians, dentists, pharmacists, and ministers) may lawfully provide "nonintoxicating" quantities of alcoholic beverages to underage persons. Section 16-6-305(1)(a), MCA (1989 Mont. Laws ch. 448, § 1). In pertinent part, however, the 1989 legislation conversely clarified that the provision of an "intoxicating" quantity would still subject the furnisher to preexisting civil liability "for damages resulting from a [resulting] tortious act." *See* §§ 16-6-305(1)(b), (4), and 27-1-710(2), MCA (1989 Mont. Laws ch. 448, §§ 1, 2); H.R. 606, 51st Leg., Reg. Sess. (1989); *House Judiciary Committee Hearing Minutes in re HB 606* (Feb. 15, 1989); *Senate Judiciary Committee Hearing Minutes in re HB 606* (Mar. 16-17, 1989). Montana dram shop liability thereafter remained constant for fourteen years until 2003 when the Legislature again reacted to a controversial dram shop liability holding.

¶13　In 1999, we affirmed a $750,000 dram shop liability verdict against a tavern owner whose employee(s) continued to serve alcohol to an "obviously intoxicated," unruly, and apparently physically-disabled patron who was driven to the tavern by a family member and then entered the bar in a wheelchair. *Cusenbary I*, ¶¶ 8-10. Later, after family

15

members wheeled the intoxicated patron out of the bar and placed him in the passenger seat of their vehicle, the man "apparently moved into the driver's seat . . ., started the vehicle, and drove it through the . . . wall" of the bar, causing serious injury to another patron who was sitting on the other side of the wall. *Cusenbary I*, ¶ 11. As an affirmative defense to the subsequent dram shop negligence claim asserted by the injured patron, the tavern owner asserted that the drunken conduct of the wheelchair-bound patron was an unforeseeable, independent intervening cause that severed the chain of causation as a matter of law between the tavern's service of alcohol and the subject injury. *Cusenbary I*, ¶ 14. Based on our prior holding in *Nehring*, however, the district court ruled that the tortious conduct of the intoxicated patron was reasonably foreseeable as a matter of law, and therefore did not sever the chain of causation-in-fact as a matter of law. *Cusenbary I*, ¶¶ 14 and 23. The court accordingly dismissed the tavern owner's affirmative defense, rejected his causation-related jury instructions, and, as pertinent, precluded him from disputing that the service of alcohol to the drunken patron was a cause of the subject harm. *Cusenbary I*, ¶ 15. On appeal, the tavern owner asserted that the question of whether the subsequent conduct of the wheelchair-bound patron was an unforeseeable intervening cause, that severed the chain of causation as a matter of law, was a question of fact for jury determination, rather than a question of law for the court. *Cusenbary I*, ¶ 17. Distinguishing the question of whether the subsequent tortious conduct of another is an intervening cause-in-fact from the question of whether an intervening cause-in-fact was nonetheless an unforeseeable independent intervening cause as a matter of law, we held

16

that the district court correctly concluded that the conduct of the intoxicated wheelchair-bound patron in getting behind the wheel and driving a car through the tavern wall was a "foreseeable intervening cause" as matter of law, and thus not an independent intervening cause severing the chain of causation-in-fact as a matter of law. *Cusenbary I*, ¶¶ 25-39 (noting that causation-in-fact was not at issue on appeal and holding that "injury-producing accident[s]" are a reasonably foreseeable result as a matter of law of the consumption of alcohol and "subsequent driving" – citing *Nehring*, 219 Mont. at 470, 712 P.2d at 1135); *Jevning*, 223 Mont. at 424, 726 P.2d at 327 (citing *Nehring* and *Bissett*); *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 104 (1928) (Andrews, J., dissenting – as cited in *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 361, 916 P.2d 122, 133 (1996)).[8]

¶14    In 2003, at the urging of the tavern industry in the wake of *Cusenbary I*, the Legislature revised the Dram Shop Act to further clarify and limit Montana dram shop liability. *See* § 27-1-710(4)-(9), MCA (2003 Mont. Laws ch. 489, § 1); S. 337, 58th Leg.,

---

[8] We later clarified under common law negligence theory in *Busta* that: (1) the primary role of foreseeability of harm is as the determinative factor under the duty-breach elements of a negligence claim (as a threshold question of law under the duty element and an unreferenced subsumed question of fact under the breach element); (2) without reference to "proximate cause," legal cause, or foreseeability of harm, whether alleged tortious conduct was a cause of an alleged injury is primarily a question of fact for the trier-of-fact under the single cause "but for" test, the multiple cause "substantial factor" test, or intervening cause "but for"/"natural and continuous sequence" test, as applicable; and (3) foreseeability of harm is a causation consideration only as an unreferenced matter of causation-in-fact subsumed in the intervening cause "but for"/"natural and continuous sequence" test, and as a limiting public policy-based question of law for the court as to whether an intervening cause-in-fact was nonetheless a foreseeable independent intervening cause severing the chain of causation-in-fact between the alleged antecedent negligence and the subject injury as a matter of law. *See Busta*, 276 Mont. at 357-73, 916 P.2d at 131-41. *See also Cusenbary*, ¶¶ 25-39 (as applied in dram shop liability context).

17

Reg. Sess. (2003); *Senate Business and Labor Committee Hearing Minutes in re SB 337* (Feb. 14, 2003); *House Business and Labor Committee Hearing Minutes in re SB 337* (Mar. 27, 2003). *Inter alia*, the 2003 legislation:

(1)     clarified that, despite that injury-producing conduct is a reasonably foreseeable result of serving alcohol to minors and intoxicated persons as matter of law, and that voluntary consumption was thus no longer an independent intervening cause cutting off an alcohol provider's liability for resulting harm as a matter of law, the trier of fact in a dram shop liability case may still consider, as a matter of causation-in-fact, whether the subsequent conduct of the consumer was the actual cause-in-fact of the subject injury rather than the antecedent conduct of the provider. *See* § 27-1-710(4), MCA ("trier of fact may consider the consumption of [alcohol] in addition to the sale, service, or provision of the alcoholic beverage in determining the cause of injuries or damages inflicted upon another by the consumer"). *Compare Cusenbary I*, ¶¶ 25-39 (citing *Nehring, Bissett, Palsgraf,* and *Busta* in re foreseeability of harm as a matter of law but noting that causation-in-fact was not at issue);

(2)     imposed a 180-day claim-notice deadline and a two-year statute of limitations for dram shop liability claims. Section 27-1-704(6), MCA; and

(3)     imposed separate $250,000 caps on "noneconomic damages" and "punitive damages." Section 27-1-710(7)-(8), MCA.[9]

B.  Non-Dram Shop Liability Common Law Tavern-Keeper Duties of Care to Patrons in re Conduct of Fellow Patrons.

¶15     Apart from the development of Montana common law dram shop liability, all property owners independently have a general common law duty to use reasonable care to

---

[9] The 2003 amendment further limited the factual circumstances under which the "consumer" of alcohol provided by another may assert a dram shop liability claim against the provider and provided that "[e]vidence of intentional or criminal activity by" the consumer is admissible in dram shop liability cases. Section 27-1-710(5) and (9), MCA (2003).

maintain their property in a reasonably safe condition for persons who may enter thereon (whether as invitees or trespassers) which, *inter alia*, includes the duty to provide reasonably adequate notice of lurking or hidden dangers of which they are aware or should be in the exercise of reasonable care. *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 318-22, 950 P.2d 748, 754-56 (1997); *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 140-45, 706 P.2d 491, 496-99 (1985). In essence, a premises liability claim is commonly a negligence claim based on that common law duty and proof of breach, causation, and damages. *Richardson*, 286 Mont. at 318-22, 950 P.2d at 754-56; *Limberhand*, 218 Mont. at 140-45, 706 P.2d at 496-99.

¶16 Somewhat analogous to common law premises liability, and apart from the restrictive pre-*Nehring* common law rules that effectively precluded tavern-keeper liability for the tortious conduct of their patrons, we have long recognized that, apart from any asserted liability for harm to others caused by the service of alcohol to underage or intoxicated persons, tavern keepers independently owe their patrons a common law duty to use reasonable care to: (1) provide adequate staff to safely police their premises; (2) not tolerate "disorderly conditions"; (3) stop fights as soon as possible upon eruption; and (4) protect patrons from any person allowed on the premises: (a) who has a "known propensity for fighting"; (b) in regard to whom the keeper has received warning is obstreperous and presents a particular danger of harm to another; or (c) who subsequently becomes "obstreperous and aggressive" toward others. *Nevin*, 139 Mont. at 514-15, 365 P.2d at 638. Breach of any of those particular circumstance-dependent common law duties

19

has thus long been independently actionable as a negligence-based common law tort claim, separate and apart from negligence-based dram shop liability for harm resulting from the service of alcohol to, and consumption by, underage or intoxicated persons. *See Nevin*, 139 Mont. at 514-15, 365 P.2d at 638-39. *Accord Kipp v. Wong*, 163 Mont. 476, 477-83, 517 P.2d 897, 898-901 (1974) (citing and applying *Nevin*); *Harrington*, ¶¶ 13-21 (citing *Kipp*).

¶17 *Nevin* involved a pre-1986 (*i.e.*, pre-*Nehring*) negligence claim asserted by a woman who alleged that a tavern owner failed to use reasonable care to protect her from the alleged negligent conduct of another patron in an Anaconda "social club." *Nevin*, 139 Mont. at 513, 365 P.2d at 637. The woman sustained an ankle injury that occurred when a fellow patron bumped into her and knocked her down as he was shoved off his barstool by another female patron whom he was attempting to kiss. *Nevin*, 139 Mont. at 513, 365 P.2d at 637. In affirming a pre-Rules judgment of nonsuit in favor of the tavern owner, we held that the plaintiff failed to present evidence sufficient to give rise to any of the narrow common law duties owed by tavern owners to protect patrons from harm caused by fellow patrons. *Nevin*, 139 Mont. at 513-15, 365 P.2d at 637-39 (*inter alia* noting that "[t]here was no evidence adduced" that tavern personnel "had served" the primary tortfeasor "any intoxicating liquor" or that he was intoxicated despite "that he had a glass partially filled with an amber fluid and ice [on the bar] in front of him").[10]

---

[10] *See similarly*, *Kipp*, 163 Mont. at 477-83, 517 P.2d at 898-901 (recognizing limited pre-*Nehring* tavern-owner common law duties of care to patrons regarding others permitted on the premises

20

¶18    *Harrington* involved a 2008 case wherein a Bozeman bar patron, who was injured by a fellow patron in a fight outside after being ejected from the bar for unruly conduct toward a bouncer, filed a tort action for damages against the bar owner based on two separately-pled but "overlapping" theories of negligence—a "liquor liability"/"dram shop" claim, based on alleged service of alcohol to "visibly intoxicated patrons" as referenced in the Dram Shop Act, and a separate claim based on alleged negligent failure to "adequately screen[] and train[] employees," de-escalate the conflict, protect the plaintiff from the other patron involved in the fight, and timely summons law enforcement. *Harrington*, ¶¶ 5-6. The district court granted summary judgment to the bar on the "liquor liability"/"dram shop" claim on ground that it was beyond genuine material factual dispute that the bar staff had not furnished alcohol to the other combatant, nor was he intoxicated at the time of the fight. *Harrington*, ¶ 8. The court similarly granted summary judgment to the bar on the separate negligence claim on the ground that it was beyond genuine material dispute, based on the plaintiff's own admission, that there was nothing about the prior interaction between the combatants "that should have alerted or warned . . . bar employees that [the other] posed any danger to [the plaintiff]." *Harrington*, ¶ 8. On appeal, we held that the district court properly granted summary judgment on the "liquor liability"/"dram shop" claim. *Harrington*, ¶¶ 22-26 (citing § 27-1-710(3), MCA). We reversed, however, on the

---

but affirming directed verdict in favor of tavern owner due to lack of sufficient evidence to prove tavern-owner breach of any of those duties in re bar room shooting of a patron by another).

21

separately-pled negligence claim, holding that genuine issues of material fact remained as to the requisite proof of the asserted *Nevin* factors (as cited in *Kipp*). *Harrington*, ¶¶ 11-21.

¶19 Consistent with the co-pled negligence claims in *Harrington*, we have previously recognized that pre- and post-Act dram shop liability is not necessarily the only theory of common law negligence under which tavern owners may be liable for harm to third parties caused by their employees and others associated with the operation of their businesses. *See Sheffield Ins. Co. v. Lighthouse Properties*, 234 Mont. 395, 396-99, 763 P.2d 669, 670-72 (1988); *Cusenbary v. U.S. Fid. & Guar. Co.* (*Cusenbary II*), 2001 MT 261, ¶¶ 4-17, 307 Mont 238, 37 P.3d 67. In *Sheffield*, a general commercial liability insurance carrier filed an action for declaratory judgment that a policy provided to a tavern owner excluded coverage for an adverse common law dram shop liability judgment against the insured. *Sheffield*, 234 Mont. at 396-97, 763 P.2d at 670. The underlying dram shop claim arose after two patrons drove away together from the tavern in an intoxicated state and were subsequently involved in a traffic accident in which the passenger sustained a neck injury rendering him quadriplegic. *Sheffield*, 234 Mont. at 396, 763 P.2d at 670. The injured passenger subsequently asserted a post-*Nehring* common law dram shop liability claim against the tavern owner alleging that tavern personnel negligently sold alcohol to the intoxicated driver in violation of §§ 16-3-301 and 16-6-304, MCA (prohibiting sale of alcohol to intoxicated persons). *Sheffield*, 234 Mont. at 396, 763 P.2d at 670. When the tavern owner subsequently tendered the claim under his liability policy, the insurer disputed coverage under an exclusion for liability resulting from violation of a statute

22

"pertaining to the sale, gift, distribution, or use of an[] alcoholic beverage" or "the selling, serving[,] or giving of any alcoholic beverage . . . to a person under the influence of alcohol." *Sheffield*, 234 Mont. at 397, 763 P.2d at 670-71. On appeal of a district court judgment that the exclusion applied and excluded coverage for the subject dram shop claim, the tavern owner asserted that the exclusion narrowly applied only to liability for harm resulting from the actual sale or provision of alcohol to intoxicated persons, but not to the alleged antecedent negligent failure of the tavern owner to "properly manage the bar" and "supervise the bar employees." *Sheffield*, 234 Mont. at 398, 763 P.2d at 671. In affirming the no-coverage judgment, we recognized that the alleged antecedent negligent failure of a tavern owner to properly "manage[] and supervis[e] . . . employees" could conceivably fall outside of the scope of such a dram shop liability exclusion if based on alleged negligence "not related to the sale or service of alcohol." *Sheffield*, 234 Mont. at 398, 763 P.2d at 671. However, based on the essence of the particular coverage claim as stated, we held that any alleged negligent bar management or supervision of employees "directly relate[d] to the sale or service of alcohol," and was thus expressly excluded from coverage. *Sheffield*, 234 Mont. at 399, 763 P.2d at 672.

¶20 We later addressed a similar insurance dispute that arose from the underlying post-Act dram shop liability adjudicated in *Cusenbary I* against a tavern owner for injury sustained by a fellow patron when an intoxicated wheelchair-bound patron was wheeled out of the bar, placed in the passenger seat of a family member's vehicle, and then slid-over behind the wheel and crashed the vehicle through the bar wall. *Cusenbary II*, ¶¶ 3-5. Upon

23

entry of the adverse judgment, the tavern owner assigned his rights under his general commercial liability insurance policy to the injured plaintiff, who then ultimately filed breach of contract and related statutory and common law bad faith claims against the insurer based on its denial of coverage under an express dram shop/liquor liability exclusion similar to the policy exclusion at issue in *Sheffield*. *Cusenbary II*, ¶¶ 1, 8, and 12. As in *Sheffield*, the policy assignee asserted that the dram shop/liquor liability exclusion did not apply because the alleged "other negligent behavior" of the tavern owner was also a cause of the subject harm and was "completely independent of," *i.e.*, antecedent to, "the [service, sale,] or furnishing of alcohol." *Cusenbary II*, ¶¶ 12-13. In support of that assertion, the assignee pointed to trial evidence indicating that the tavern owner "was negligent in the manner in which he ran his business," *i.e.*, that he "had little or no experience in running a bar," "had no written operating rules or policies," was solely responsible for "interviewing, hiring, and training personnel," had "no training program" or materials, hired unqualified employees, "failed to adequately staff the premises," and "routinely tolerated disorderly conditions." *Cusenbary II*, ¶ 13. As in *Sheffield*, we again recognized that "other negligence" antecedent to the negligent sale of alcohol to an intoxicated person could conceivably fall within coverage outside of a dram shop/liquor liability exclusion, but noted that the "only theory of negligence" alleged and at issue at trial in *Cusenbary I* was the "act of serving, selling[,] or furnishing alcohol" to the primary tortfeasor prior to the accident. *Cusenbary II*, ¶ 15. "No assertion was ever made" that any of the cited evidence of other antecedent negligence by the tavern owner "was relevant

24

to any other theory of negligence or . . . purpose"—"the only basis for the jury's verdict[] was the serving of alcohol to" the intoxicated patron who caused the subject injury. *Cusenbary II*, ¶¶ 14-15. We thus affirmed the grant of summary judgment to the insurer under the dram shop/liquor liability policy exclusion because, as in *Sheffield*, the underlying *Cusenbary I* claim did not "set forth" or involve "a theory of negligence separate and apart from the sale or service of alcohol"—on the evidence presented, any "improper employee supervision and training" or "mismanagement of the tavern" "directly related to the service or sale of alcohol" to an intoxicated patron. *Cusenbary II*, ¶¶ 15-17. Consequently, as manifest in *Harrington* and our analysis in *Cusenbary II*, and pursuant to the language of § 27-1-710(1) and (3), MCA, as construed in context of the underlying common law to which it applies, other theories of negligence remain independently cognizable apart from the Dram Shop Act if the alleged breach of legal duty did not directly "arise from" or relate to the act of furnishing alcohol to the person who consumed it. *See* § 27-1-710(1) and (3), MCA.

C. Effect of Dram Shop Act on Babcock's Separately-Pled Negligence-Based "Premises Liability" Claim.

¶21 Based on its clear and unambiguous language, the Dram Shop Act expressly applies to and limits negligence-based tort claims against "a person or entity that furnishe[d] an alcoholic beverage for injury or damage arising" in whole or in part "from an event involving the person who consumed the beverage." Section 27-1-710(1)-(3), MCA. *Compare Nehring*, 219 Mont. at 466-70, 712 P.2d at 1332-35; *Bissett*, 220 Mont. at 156-57, 717 P.2d at 546-47. As pertinent here, the Act limited the previously-recognized common

25

law dram shop liability (*i.e.*, liability for harm caused by underage or intoxicated consumers of an alcoholic beverage as a result of the negligent furnishing of alcohol thereto) by effectively substituting a more limited duty and standard of care under the duty element of the claim and imposing a two-year statute of limitations. *See* § 27-1-710(2)-(3) and (6), MCA.

¶22    As pled, Babcock's base tort claims are both common law negligence claims based on asserted legal duties, alleged breaches thereof, causation of injury, and resulting damages. *See Cusenbary*, ¶ 21 (elements of common law negligence claim). In substantive essence, the "negligence (liquor liability)" claim is based on alleged breach of the limited tort duty and standard of care specified by § 27-1-710(3)(a), MCA, and is thus subject to the two-year Dram Shop Act statute of limitations.

¶23    His ambiguously pled "negligence (premises liability)" claim is more problematic, however. On one hand, the claim manifestly states an independent *Nevin-Kipp* theory of negligence. *See Nevin*, 139 Mont. at 514-15, 365 P.2d at 638; *Kipp*, 163 Mont. at 481, 517 P.2d at 900 (citing *Nevin*); and *Harrington*, ¶ 13 (citing *Kipp*). On the other, the claim is also littered with the unnecessary and redundant inclusion by reference of factual allegations, set out as allegations common to both claims, of unlawful furnishing and consumption of alcohol, and resulting tortious conduct, by the primary tortfeasor (Windauer). On their face, the surplus complaint allegations preliminarily incorporated by reference at least in part implicate post-Act dram shop liability, as referenced in § 27-1-710(1) and (3), MCA.

26

¶24 Nonetheless, in assessing the facial sufficiency of an asserted claim for relief, we must liberally construe all well-pled factual allegations in the light most favorable to the claimant. *Stowe v. Big Sky Vacation Rentals, Inc.*, 2019 MT 288, ¶ 12, 398 Mont. 91, 454 P.3d 655; *Kleinhesselink v. Chevron, U.S.A.*, 277 Mont. 158, 161, 920 P.2d 108, 110 (1996); *Boreen v. Christensen*, 267 Mont. 405, 408, 884 P.2d 761, 762 (1994); *Willson v. Taylor*, 194 Mont. 123, 126, 634 P.2d 1180, 1182 (1981). An asserted claim is facially deficient only if it either fails to state a cognizable legal theory for relief, or states an otherwise cognizable legal claim but fails to state sufficient facts that, if true, would entitle the claimant to relief thereunder. *Anderson v. ReconTrust Co.*, 2017 MT 313, ¶ 8, 390 Mont. 12, 407 P.3d 692 (internal citations omitted). Here, despite the undisciplined inclusion by reference of factual averments that would otherwise redundantly bring the claim within the language of § 27-1-710(1) and (3), MCA, the "negligence (premises liability)" claim is predominantly and distinctly based on alleged breaches of the independent common law duties of care owed by tavern keepers to their patrons, as recognized in *Nevin*, 139 Mont. at 514-15, 365 P.2d at 638, *Kipp*, 163 Mont. at 481, 517 P.2d at 900, and *Harrington*, ¶ 13. As a matter of law, proof of a negligence claim based on an alleged breach of the separate common law duties of care recognized in *Nevin*, et al., is not dependent on proof of: (1) a breach of §§ 16-3-301(4)(a)-(b), 16-6-304, or -305(1)(a)-(b), MCA (prohibiting sale, delivery, or provision of alcoholic beverages to persons "under 21 years of age" or who are "actually, apparently, or obviously intoxicated" or "under the influence of alcohol"); (2) a breach of the more limited superseding tort duties

27

and standards of care specified by § 27-1-710(3), MCA, of the Dram Shop Act; or (3) a causal link-in-fact between the furnishing of an alcoholic beverage to a consumer and the harm subsequently caused by the related tortious conduct of that person. Though not technically a common law premises liability claim, and regardless of the extraneous factual averments unnecessarily incorporated by reference into the claim, Babcock's separately pled "negligence (premises liability)" claim is in core essence an independently cognizable negligence claim, based on an alleged breach of the specific common law duties recognized in *Nevin* and progeny, and thus not subject to the Dram Shop Act within the language of § 27-1-710(1)-(3), MCA.

¶25 The general tort claim period of limitations is three years from the date of accrual of the claim. Section 27-2-204(1), MCA. Casey's does not dispute that Babcock filed his complaint within three years of the subject incident and injury. In its amended answer to Babcock's complaint, and beyond the limited scope of its subsequent limited motion for summary judgment based on the two-year Dram Shop Act statute of limitations, Casey's generally denied all of the factual complaint allegations pertinent to the essential elements of the co-pled "negligence (premises liability)" claim. Indeed, Casey's acknowledges in a footnote on appeal that:

> The case was dismissed [below] before significant discovery. Casey's Bar is not sure what evidence, if any, Mr. Babcock is relying upon . . . [in regard to the asserted "negligence (premises liability)" claim].

The limited scope of the District Court's ruling on the two-year Dram Shop Act statute of limitations had no bearing on the facial or underlying evidentiary sufficiency of the

28

"negligence (premises liability)" claim as an independent *Nevin-Kipp* negligence claim not based on or "arising from an event involving the person who consumed the beverage." Subject to further discovery and motion practice, if any, genuine issues of material fact thus remain on the face of the pleadings on the breach element of Babcock's co-pled "negligence (premises liability)" claim under the independent common law duties of care recognized in *Nevin* and progeny, as pled on the face of the claim. We hold that the District Court erroneously concluded that § 27-1-710(6), MCA, time-barred Babcock's "negligence (premises liability)" claim.

## CONCLUSION

The District Court erroneously concluded that Babcock's "negligence (premises liability)" claim was time-barred by the two-year period of limitations specified by § 27-1-710(6), MCA. The July 2020 judgment of the District Court granting summary judgment to Casey's is thus reversed as it applies to that claim. We hereby remand this case for further proceedings on the asserted "negligence (premises liability)" claim in accordance with this Opinion.

¶26    Reversed and remanded.

/S/ DIRK M. SANDEFUR

We concur:

/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

29